# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GERALDINE ALLEN,                          :

     Plaintiff,                          :

                            Case No. 3:10cv00213

 vs.                                        :

                            District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                        :  Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                  :

     Defendant.                          :

## REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Geraldine Allen filed applications with the Social Security Administration asserting she was eligible to receive Supplemental Security Income and Disability Insurance Benefits because her disabilities precluded her from performing any meaningful paid job. The Social Security Administration concluded that she was not under a benefits-qualifying disability and denied her applications.

Plaintiff brings the present case challenging the Social Security Administration's decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. # 11),

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

the administrative record, and the record as a whole.  Plaintiff seeks an Order remanding this case to the Social Security Administration for payment of benefits.  The Commissioner asks the Court to affirm the Social Security Administration's denial of Plaintiff's applications.

This Court has subject matter jurisdiction over this case.  *See* 42 U.S.C. §§405(g), 1383(c)(3).

## II.    Background

### A.    Procedural History

Plaintiff filed her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 28, 2004.  Through each application, Plaintiff asserted that she had been a "disability" since June 9, 2004 due to diabetes, a stroke, high blood pressure, pancreatitis, vision problems, and sleep apnea.  (Tr. 57-59, 134, 656-58).

After the Social Security Administration preliminarily denied Plaintiff's applications, the matter proceeded to a hearing before Administrative Law Judge (ALJ) Melvin A. Padilla.  Plaintiff testified during the ALJ's hearing; a medical expert and a vocational expert also testified.

ALJ Padilla later issued a written decision concluding that Plaintiff was not eligible to receive Disability Insurance Benefits or Supplemental Security Income mainly because she was not under a "disability" within the meaning of the Social Security Act. (Tr. 16-32).

### B.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 47 years old – or a "younger person" – on the date her claimed disability began.  20 C.F.R. §§404.1563(c), 416.963(c).[2]  She was 51 years old  – or a "person closely approaching advanced age" – on the date the ALJ issued his decision.  20 C.F.R. §404.1563(d).

Plaintiff has a high school education and she completed one year of college.  Over the years she has worked as a cook/preschool worker, a substitute teacher, a residential aide, and a home health aide.  (Tr. 85-92).

During the ALJ's hearing, Plaintiff testified she could not work due to visual problems (including glaucoma), low-back pain, diabetes mellitus, right knee pain, obstructive sleep apnea, left ear problems, and hypertension.  (Tr. 679-86).  She weighed 270 pounds at that time.  (Tr. 677).  She lived in an apartment with her boyfriend and her two grandchildren (fourteen and fifteen years old).  (Tr. 677, 691).

Plaintiff last worked in June 2004 as a home health care aide, a job she had held for seventeen or eighteen years.  (Tr. 679).  She was no longer able to do such work because it required a lot of driving and she had vision problems.  (Tr. 677, 679).  She wore eyeglasses all the time.  (Tr. 680-81).  She testified that pressure in her eyes has increased to the point where her peripheral vision is affected.  *Id.*  She took prescription

----

[2]  The remaining citations will identify the pertinent DIB Regulations controlling with full knowledge of the corresponding SSI Regulations.

medication for her eye problem, and she took it as directed. *Id.* Plaintiff explained that she had undergone two laser surgeries on her right eye and one surgery on her left eye. *Id.*

Plaintiff described her low-back pain as a constant, sharp, stabbing pain. (Tr. 682). She did not wear a back brace, receive epidural injections, or engage in physical therapy. *Id.* One physician had recommended back surgery. (Tr. 683). Plaintiff acknowledged that she had been advised to lose weight and was in a bariatric surgery program. *Id.* She was also jaundiced for months, and she could not exercise. *Id.*

In 1992 Plaintiff was diagnosed with diabetes mellitus. (Tr. 684). She testified that she took her medication as prescribed and checked her blood-glucose level in the morning and the evening. *Id.* She tried to follow a diabetic diet but ate whatever she could due to limited finances. *Id.*

Plaintiff also experienced bad pain in her right knee. She wore a knee brace without benefit. (Tr. 684-85). She had not been treated with injections in her knees. According to Plaintiff, a surgeon has refused to do surgery on her knee until she loses at least one hundred pounds. *Id.*

In 2002 Plaintiff was diagnosed with obstructive sleep apnea. She used a C-PAP machine at night. She slept for four or five hours each night with the assistance of medication. She also napped during the day for three or four hours. (Tr. 686).

Plaintiff took medication to treat her high blood pressure. The medication lowered her blood pressure, but she understood it was still high. *Id.* She reported dizziness and

4

stomach problems as side effects from her blood pressure medication.  (Tr. 688).  When she told her doctor about these side effects, the doctor changed her medications.   At the time of the ALJ's hearing, Plaintiff was doing okay on her medications.  (Tr. 688).

Plaintiff also suffered from sinus problems and has tubes in her left ear.  (Tr. 687).

Plaintiff estimated that she can walk for two to five minutes at a time, stand for two minutes at a time, and sit for twenty to thirty minutes at a time.  (Tr. 688-89).  She could lift or carry no more than five to ten pounds.  (Tr. 690).  She claimed that she needs help getting dressed.  *Id.*  She can climb stairs one at a time.  *Id.*  She walked with the help of a cane, which, according to Plaintiff, had been prescribed at the Good Samaritan Hospital Outpatient Clinic the year prior to the hearing.  (Tr. 689).  Plaintiff testified that she uses the cane even at home.  (Tr. 690).

As to Plaintiff's daily activities, she does not drive due to her vision problems. She no longer has a driver's license because she did not renew it in 2006.  She stopped doing all household chores in 2004.  (Tr. 692).  Her grandchildren do the cooking and dishwashing.  She shopped at Wal-Mart using an electric cart.  (Tr. 691).  Twice a month she attended a ninety-minute church service.  (Tr. 692).  She visited others, received visitors in her home, spoke on the phone, and watched television.  She used to sew for recreation but stopped sewing in the early 1990s due to neuropathy in her hands.   (Tr. 698).  She did not exercise and had not done garden work since 2002.  (Tr. 693-94).

Plaintiff acknowledged her history of substance abuse (involving alcohol, marijuana, and crack cocaine).  She alleged that she stopped drinking alcohol in 1987 or

1988 and stopped using crack cocaine in 1987.  (Tr. 694-96).  She continued to use marijuana occasionally, once every two or three months.  And the longest she had ever gone without using marijuana was two or three months.  At some point in the past, she underwent nine months of substance abuse treatment.  *Id*.

### C.  **Medical Source Opinions**

Plaintiff relies on the opinion of Khairat Uddin Ahmed, M.D., her treating physician from August 2003 to January 2005.  (Tr. 239-64).  Dr. Ahmed treated Plaintiff for hypertension, diabetes, right eye vitreous hemorrhage, depression, esophageal spasms and balance problems.  *Id.*

On August 13, 2004, Dr. Ahmed completed a Basic Medical form.  (Tr. 654-55).  Dr. Ahmed opined that Plaintiff could stand/walk for half an hour and sit for one hour in an eight hour workday, and she could lift/carry up to five pounds.  According to Dr. Ahmed, Plaintiff was markedly limited in her ability to push/pull, handle, perform repetitive foot movements, see, and hear.  She was moderately limited in her ability to bend and reach.  Dr. Ahmed checked a box thus indicating that Plaintiff would be unemployable for between nine and eleven months.

In determining Plaintiff's physical residual functional capacity, the ALJ relied on the opinions of Paul A. Boyce, M.D., an internal medicine specialist with a subspecialty in diabetes, who testified during the administrative hearing.

In summarizing the record, Dr. Boyce testified that Plaintiff's diabetes was under "less than satisfactory control" and that there had not been a lot of adjustments in terms of

her diabetes management regimen. (Tr. 700-01). Dr. Boyce testified that he could not tell the reason for the poor diabetes control, although he mentioned that Plaintiff's diet was an issue. (Tr. 701). Dr. Boyce also testified that Plaintiff had a vitreous hemorrhage generally associated with diabetic retinopathy in June of 2004. She was effectively treated, and by December 2004, she had a visual acuity of 20/20. (Tr. 701-02). Dr. Boyce explained that Plaintiff also underwent laser surgery and cataract extraction. (Tr. 702). Her most recent visual acuity was measured at 20/25 in her left eye and 20/30 in right eye. *Id.* Dr. Boyce testified that visual field testing showed some loss of peripheral vision but did not appear show a severe loss of visual field acuity. (Tr. 702-03). He explained that there may be some upper-outer quadrant deficits but that this loss was not medically significant. Dr. Boyce testified that he did not see documentation of diabetic neuropathy in the record. (Tr. 703).

Dr. Boyce next testified with respect to Plaintiff's orthopedic condition. Dr. Boyce noted that an October 2006 x-ray of the right knee revealed only a small bony spur consistent with degenerative joint disease but without significant narrowing of the joint. (Tr. 703). Plaintiff weighed 267 pounds at that time. *Id.*

Dr. Boyce testified that Plaintiff's first documented visit to an orthopedist was in October 2006. *Id.* According to Dr. Boyce, orthopedic records reveal that Plaintiff had no effusion but did have tenderness. *Id.* The impression was of an avulsion. *Id.* Dr. Boyce testified that there was mention of her back pain but very little in terms of objective examinations other than a consultive evaluation in February 2005. (Tr. 704).

Dr. Boyce notes that a lumbar MRI was taken a month before the administrative hearing. It showed moderate facet arthritis with bulging disc at L5-S1 "and some further degenerative changes, and moderate facet arthropathy in other lumbar vertebrae." *Id*. Dr. Boyce continued, "There is evidence that there's some contact with the S1 nerve root in the lateral recess, the right greater than the left, and suggestion of exiting L5 nerve roots within the foramina, that there's some contact with those." *Id.*

Dr. Boyce noted that Plaintiff has experienced several bouts of pancreatitis. (Tr. 704). She was hospitalized in May 2004 "with a diagnosis of acute pancreatitis." *Id*. No etiology was determined. *Id*. An abdominal study was normal. *Id*. Plaintiff was again hospitalized in June 2006, and although her alkaline phosphatase was elevated, an ultrasound of the liver and pancreas was normal. (Tr. 705). A drug screening was positive for marijuana at that time. Id.

Dr. Boyce next noted that Plaintiff was hospitalized on December 31, 2006 with pancreatitis. Several days later she left the hospital against medical advice. *Id.* She was re-admitted on January 22, 2007 and a gallbladder ultrasound and a CT were negative. *Id.* A liver biopsy was positive for biliary disease secondary to a drug reaction, most likely Flexeril, and could be the interaction of several medications. (Tr. 705-06). Dr. Boyce opined that there was no evidence of recurrence of Plaintiff's biliary tract problem in one year. (Tr. 706).

Dr. Boyce further testified that Plaintiff had recurrent otitis (ear inflammation). (Tr. 706). Her June 2007 audiogram – the last audiogram documented in the record –

8

showed a very slight loss of hearing in her right ear and a moderate level loss in her left ear.  (Tr. 706-07).

Dr. Boyce testified that Plaintiff did not meet or equal the criteria of an impairment described in the Listings.[3]  (Tr. 707).  Dr. Boyce found the state agency reviewing physicians' conclusion that Plaintiff could perform light work to be reasonable, although Dr. Boyce was not certain if it remained accurate as of the date of the hearing.  *Id.*  Dr. Boyce noted that the findings by the orthopedist surgeons in the fall of 2006 reduced her functional capacity to sedentary work as of October 2006.  *Id*.  Under Social Security regulations, a person able to perform "sedentary" work falls in the lowest category of work ability.  *See* 20 C.F.R. §404.1567(a)-(e).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  *Id*. at §404.1567(a).

Dr. Boyce further testified that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; she should not climb ropes, ladders, scaffolds; she could occasionally climb ramps and stairs; and she could occasionally balance, stoop, and crouch but should not crawl; and she could sit without restrictions.  (Tr. 707-08).  Dr. Boyce thus opined that Plaintiff could perform "modified light" work activities.  (Tr. 708).  A person able to perform the full range of "light" work can lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."

---

[3]  *See* Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

9

20 C.F.R. §404.1567(b).

Dr. Boyce found no restrictions related to Plaintiff's vision, her communicative function, or her manipulative function. (Tr. 708). Dr. Boyce testified that Plaintiff should avoid "working with dangerous moving machinery," and should not work in highly noisy environment because of hearing loss. *Id.*

When cross-examined by Plaintiff's counsel, Dr. Boyce recalled that Dr. Oza mentioned that Plaintiff had symptoms suggestive of neuropathy, but Dr. Boyce found Dr. Oza's statement inconsistent with diabetic neuropathy, which is symmetrical, and Dr. Oza said that she had more symptoms on one side than the other. (Tr. 709). Plaintiff's attorney referred to a study showing severe atrophy of one kidney, and Dr. Boyce responded that Plaintiff has normal kidney function with just one kidney. (Tr. 710).

## III.  **Administrative Review**

### A.  **"Disability"**

Determining whether a social security applicant is eligible to receive Disability Insurance Benefits (DIB) and/or Supplemental Security Income (SSI) often turns on whether the applicant is under a "disability" within the meaning of the Social Security Act. *Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). The universe of benefit-qualifying disabilities is finite. It consists of physical or mental impairments that are both medically determinable and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in substantial gainful activity that is available in the

10

regional or national economies.  *Bowen*, 476 U.S. at 469-70; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Applicants for social security benefits bear the ultimate burden of establishing that they are under a disability.  *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 275 (6th Cir. 2010).

### B.     ALJ Padilla's Decision

ALJ Padilla's more pertinent findings began at Step 2 of the sequential evaluation where he concluded that Plaintiff had the following severe impairments: "diabetes mellitus with associated diabetic retinopathy, lumbar degenerative disc disease, degenerative joint disease of the knees which is aggravated by obesity, recurrent pancreatitis with a related biliary tract problem, a history of substance abuse including ongoing marijuana use and alcohol and cocaine abuse in apparent remission."  (Tr. 21).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Listing of Impairments. (Tr. 27).

At Step 4 the ALJ concluded that Plaintiff retained the residual functional capacity to perform light work with the following limitations:

> [S]he must be able to alternate positions every fifteen to thirty minutes and cannot climb ladders, ropes, or scaffolds to otherwise work around unprotected heights, hazards, or moving machinery.  She is also limited to only occasional balancing, stooping, crouching, or climbing of stairs.  She is also precluded from crawling or working in noisy

11

environments. Due to her somatic preoccupation, she is also restricted to performing low-stress jobs which are not fast-paced in nature.

(Tr. 27).  Applying Plaintiff's residual functional capacity, the ALJ further concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a residential aide and home health care aide.  (Tr. 30).

At Step 5 the ALJ concluded that Plaintiff can perform a significant number of jobs in the national economy.  (Tr. 34).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible to receive DIB or SSI. (Tr. 32).

## IV.  __Judicial Review__

Judicial review determines, in part, " whether the ALJ applied the correct legal standards..."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Social Security Regulations and caselaw establish those standards by, for example, instructing ALJs to provide "good reasons" for the weight placed on a treating physician's opinions.  *See* 20 C.F.R. §404.1527(d)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

It is an elemental principle of administrative law that agencies are bound to follow their own regulations....  The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates....  An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may

12

result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.

*Wilson*, 378 F.3d at 545 (internal citations and punctuation omitted).

Judicial review of an ALJ's decision also considers "whether the findings of the ALJ are supported by substantial evidence." *Blakley*, 581 F.3d at 406; *see Bowen*, 478 F3d at 745-46. Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is present "if a 'reasonable mind might accept the relevant evidence as adequate to support...'" the ALJ's factual findings. *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The existence of substantial evidence does not depend on whether the Court disagrees or disagrees with the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead the ALJ's decision is affirmed "if his findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

"Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th

13

Cir. 2009); *see Wilson*, 378 F.3d at 546-47; *see also Kalmbach v. Comm'r of Soc. Sec.*, 2011 WL 63602 at *6 (6th Cir. 2011)("we must reverse and remand if the ALJ applied the incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.")

## V.    Discussion

### A.    Medical Source Opinions

#### 1.

Plaintiff contends, "The ALJ erred in rejecting the opinion of Plaintiff's treating physician to find that Plaintiff was not disabled by her impairments. He rejected Dr. [Ahmed's] restrictions, stating that Plaitniff would be bedfast with such restrictions. (Tr. 28) The answers that Dr. [Ahmed] gave were in regard to Plaitniff's ability to complete an eight hour workday...." (Doc. #7 at 55).

Social Security Regulations and case law require ALJs to apply controlling weight to a treating medical source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. §404.1527(d)(2); *see also Rabbers*, 582 F.3d at 660; *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. If a treating medical source's opinion is not entitled to controlling weight, it must be weighed under "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any

14

other relevant factors."  *Rogers*, 486 F.3d at 242.

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. §404.1527(d)(1).  However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  This occurs because the Commissioner views non-examiners "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2 .  Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1527(d), (f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3.

## 2.

The ALJ began weighing Dr. Ahmed's opinions by recognizing that "[t]he only medical evidence of record in this case indicating that the claimant is disabled from all work activity is a Basic Medical evaluation form signed by ... [Dr.] Ahmed..., dated August 13, 2004."  (Tr. 28).  The ALJ rejected Dr. Ahmed's opinion, explaining:

> [T]he level of functional limitation alleged by Dr. Ahmed is grossly disproportionate to the medical evidence of record.  The restrictions on standing and walking advocated by Dr. Ahmed essentially portray this individual as nearly totally bedfast (able sit and stand/walk for a total of just ninety minutes per day).  She does of course have some obesity-induced degenerative knee joint disease but there is certainly no medical basis to conclude that she lacks the ability to be out of bed for more than ninety

15

minutes per day. Nor is there any basis to limit her to lifting just five pounds. Although she has some degenerative changes in her spine as demonstrated on the June 2008 MRI, the extent of this spinal pathology is not so pronounced that [s]he could not lift consistent with even sedentary level work. Dr. [Ahmed] is a primary care physician who saw this patient a total of five times in 2005 for routine medical follow up. She saw this doctor a total of nine times in 2006 also for routine follow up including one time to fill out the assessment form. In this face of these circumstances, I am compelled to afford greater weight to the testimony of the Medical Expert, Dr. Boyce, an internal medicine specialists with a subspecialty in diabetes, and to state agency medical consultants. Dr. Boyce had the benefit of reviewing the entire body of the medical evidence of record and the "modified" light level restrictions he suggested are far more compatible with the mild to moderate level of functional limitations demonstrated by the medical evidence of record as a whole in this case.

(Tr. 28-29)(internal citations omitted). The ALJ's explanation demonstrates that he weighed Dr. Ahmed's opinion under the correct legal criteria. He recognized the absence of supporting medical evidence, and he considered the frequency and type of care ("routine medical follow up") Dr. Ahmed provided, and he essentially found Dr. Ahmed's opinions inconsistent with opinions of other medical sources – especially Dr. Boyce. The ALJ also applied the correct legal criteria when deciding to favor Dr. Boyce's opinion. The ALJ considered Dr. Boyce's specialization in internal medicine, his sub-specialization in diabetes, his review of the entire record (as opposed to Dr. Ahmed's more limited review), and the consistency of Dr. Boyce's opinions with the reviewing physicians for the Ohio Bureau of Disability Determinations. For these reasons, the ALJ applied factors permitted under the Regulations, and thus applied the correct legal criteria to weighing Dr. Ahmed's opinion and favoring Dr. Boyce's opinion. *See* 20 C.F.R. §§404.1527(d)(2)-(5).

16

Substantial evidence supports the ALJ's rejection of Dr. Ahmed's opinion.  A review of the two-page form Dr. Ahmed completed shows it lacking in explanation or reference to supporting medical evidence.  *See* Tr. 654-55.  Dr. Ahmed simply listed Plaintiff's diagnoses and noted that she complained of ("c/o") vision problems, unsteady balance, and sleep problems.  Although he also believed Plaintiff was particularly limited in her ability to stand/walk, to sit, and to lift/carry, and although her other physical abilities were markedly limited, he provided no reasoned analysis or reference to medical evidence in support of his opinion.  Dr. Ahmed instead directed the reader to Section D or Section II, which if considered separately or together, or indeed if considered in light of all the information Dr. Ahmed provided, do not provide any meaningful insight into why he believed Plaintiff was so restricted.  *See* 20 C.F.R §404.1527(d)(2)("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more we will give that opinion."); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); 20 C.F.R. §404.1527(d)(3) ("We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.").  Dr. Boyce's opinion, moreover, constitutes substantial evidence supporting the ALJ's decision to reject Dr. Ahmed's opinion and supporting his assessment of Plaintiff's residual functional capacity.  *See* 20 C.F.R. §404.1527(d)(5) ("We generally give more

17

weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Plaintiff also contends that although the ALJ relied on Dr. Boyce's opinions over Dr. Ahmed's opinions, Dr. Boyce's opinion actually supports Dr. Ahmed's opinion. Plaintiff explains, "Dr. Boyce stated that Plaintiff was limited to sedentary work as of October 2006, when the MRI of Plaintiff's lumbar spine was performed. (Tr. 707)  At the very least, the ALJ should have found Plaintiff disabled as of her fiftieth birthday.  20 CFR Part 404, Subpt. P., Appendix 2, §201.14." (Doc. # 7 at 57).

Dr. Boyce did indeed opine that Plaintiff could perform only sedentary work as of October 2006.  *See* Tr. 707.  But, he followed this up with certain limitations that revealed Plaintiff to be capable of performing light work.  Specifically, Dr. Boyce testified Plaintiff could stand walk two hours a day; she had no restrictions on sitting with normal breaks; she could lift 20 pounds occasionally and 10 pounds frequently; she could not climb ladders, ropes or scaffolds, and crawl; she could occasionally climb ramps and stairs, balance, stoop and crouch; and she could not work with dangerous machinery and in an environment where there was a high noise level.  (Tr. 707-08).  Dr. Boyce further testified that Plaintiff could perform a modified range of light work.  (Tr. 708). Consequently, considering Dr. Boyce's testimony as a whole, his opinion supports the ALJ's rejection of Dr. Ahmed's opinion and the ALJ's assessment of Plaintiff's residual functional capacity.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source

18

opinions lack merit.

**B.    <u>Credibility</u>**

Plaintiff contends that the ALJ erroneously rejected her testimony about the disabling effects of her impairments and about her limited ability to engage in daily activities.  She maintains that the longitudinal medical record show that her physical condition worsened over time and supports her statements of disability.  Plaintiff asserts, "The ALJ ludicrously relied on the fact that '[t]here is no evidence that she has ever been interviewed by Children's Services for unloading heavy responsibilities on her minor grandchildren' to find she was not credible."  (Doc. #7 at 58)(quoting, in part, ALJ's decision at Tr. 30).  And Plaintiff similarly states, "Likewise the ALJ's absurd reasoning that Plaintiff['s] past drug use and prison time made her not credible is not substantial evidence."  (Doc. #11 at 58).

A social security applicant's credibility is evaluated in two parts:  "First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.  Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities."  *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citations omitted).  A list of factors – for example, "claimant's daily activities; location, duration, frequency and intensity of symptoms; factors that precipitate and aggravate symptoms...," *id*., assist

19

the ALJ in evaluating an applicant's symptoms.

The ALJ cited the applicable credibility regulations, namely 20 C.F.R. §§404.1529 and 416.929, and accurately described the legal criteria applicable to evaluating Plaintiff's credibility.  *See* Tr. 29.  In light of this, the ALJ did not err as a matter of law when evaluating Plaintiff's credibility.  *See Rogers*, 486 F.3d at 247 (describing the applicable legal criteria).  The issue, then, is whether substantial evidence supports the ALJ's reasons for not fully crediting Plaintiff's testimony.

"[T]he ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'  Rather, such determinations must find support in the record."  *Rogers*, 486 F.3d at 247 (quoting in part Social Sec. Ruling 96-7p, 1996 WL 374186, at * 4).  When substantial evidence supports the ALJ's credibility findings, his findings are "accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination.  The ALJ reasonably found that certain factors undermined Plaintiff's credibility.  *See* Tr. 22-30.  He wrote:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, her subjective statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

residual functional capacity assessment for the reasons explained below. An assessment of all relevant factors does not establish that she is limited to the extent that she is "disabled" within the meaning of the Social Security Act.  Her daily activities and level of functioning in the performance of routine daily tasks as previously described, is consistent with an ability to function in a competitive work environment performing job duties at the light level of exertion with the additional functional restrictions set forth above.  She now claims that she stopped doing all household chores in 2004 and that she relies upon her fourteen and fifteen year-old grandchildren to do the cooking.  There is no evidence that she has ever been intervened by Children's Services for unloading heavy responsibilities on her minor grandchildren.  Yet when she was examined by Dr. Olson in February 2005 she admitted that she was sharing the cooking duties with her boyfriend.  It is in truth clear from the record that she would be able to perform a full range of daily chores if she chose to do so.  While she attempted to portray herself as leading a sedentary existence when she testified at the hearing, such lifestyle must be considered a matter of choice not the result of her impairments.  Considering all of the evidence, it is found that her allegations lack credibility to the extent that they purport to establish a condition of disability within the meaning of the Social Security Act and Regulations.

The claimant's residual functional capacity for a reduced range of light work takes into consideration the location, duration, frequency, and intensity of the alleged symptoms, as well as precipitating and aggravating factors.  She has undergone several eye surgeries as well as surgeries on her ears.  She tolerated each of these procedures well and has now recovered with no apparent complications.  All of her recent treatments involved only periodic, conservative measures and were by no means indicative of total disability.  She takes some prescription medications.  However, there is no evidence that she experiences any side effects from her medications or treatments which would prevent her from working.  She has also repeatedly alleged to medical staff that she has suffered a stroke in the past.  But there is once again no medical evidence that she has in fact suffered a cerebrovascular accident of any kind or that she has any ongoing neurological problems associated with a prior stroke episode.  Her overall credibility must be considered highly suspect in light of these false allegations.  Her subjective allegations and complaints must also be considered highly suspect in light of her serious history of drug and alcohol use.  She was previously addicted to both crack cocaine and alcohol and continues to use marijuana allegedly every two or three months.  She now

21

minimizes her drug use but she admitted to Dr. Olson that she was using marijuana every day when she had adequate funds to do so. And finally, she also has a significant legal history including an arrest for prostitution and a conviction and nine-month prison sentence for felonious assault. Her history of such conduct casts further doubt upon her allegations of total disability. The above-described residual functional capacity assessment for a reduced range of light work is consistent with the objective evidence of record and the clinical findings of the treating and examining sources. Therefore, her subjective allegations of total disability are found to be disproportionate and less than credible.

(Tr. 29-30). Contrary to the ALJ's decision, Plaintiff's lack of contact with Children's

Services and her past incarceration – without more specifics – provides minimal, if any,

insight into her credibility. But the ALJ looked beyond these facts and to evidence

providing other reasons for discounting Plaintiff's credibility. As revealed by the above

lengthy quotation, the ALJ considered the objective medical evidence; Plaintiff's

activities of daily living; the location, intensity, duration and intensity of Plaintiff's

alleged pain and other symptoms; and the precipitating and aggravating factors;

medication and other treatment Plaintiff underwent with no side effects. (Tr. 29-30).

Although Plaintiff stated she stopped all chores, the record reveals she lived with friends,

cooked, cleaned, made her bed, and did the laundry. (Tr. 77, 79-80). She walked, used

public transportation, shopped, played with her grandchildren, visited with her family and

friends, and went to the library. (Tr. 81). In August 2006 Plaintiff reported she liked to

shop. (Tr. 444). The record further indicates that Plaintiff lived with her boyfriend, went

grocery shopping, went to church, and visited with family and friends. (Tr. 271, 690-94).

Substantial evidence thus supports the ALJ's reasons for discounting Plaintiff's

credibility.

Plaintiff's reliance on the longitudinal medical record reveals – at best for her – that the record contains some evidence supporting her credibility.  Such favorable evidence to Plaintiff does not obviate the substantial evidence supporting the ALJ's findings.  "'The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'  Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986))(other citation omitted); *see Wright-Hines*, 597 F.3d at 395 (ALJ's decision is affirmed "if his findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision.").

Accordingly, Plaintiff's challenges to the ALJ's credibility determination lack merit.

## IT IS THEREFORE ORDERED THAT:

1.      The Commissioner's final non-disability determination is affirmed; and

2.      The case is terminated on the docket of this Court.


August 4, 2011                                                     s/Sharon L. Ovington
                                                          Sharon L. Ovington
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).